Alan RUSH, Appellant,

v.

KIMCO CORPORATION and Division of Employment Security, Respondents.

No. WD 72455.

Missouri Court of Appeals, Western District.

April 5, 2011.

Alan Rush, Kirksville, MO, pro se.

Kenneth P. Carp, Clayton, MO, for Respondent, Kimco Corporation.

Larry R. Ruhmann, Jefferson City, MO, for Respondent, Division of Employment Security.

Before Division II: KAREN KING MITCHELL, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

Alan Rush ("Rush") appeals the Labor and Industrial Relations Commission's ("Commission") order disqualifying him from unemployment benefits. Rush contends that the Commission erred in affirming the denial of the benefits in that his single instance of bad judgment did not demonstrate that he engaged in willful conduct or in conduct so negligent as to manifest culpability. We agree. The judgment of the Commission is therefore reversed.

### Facts and Procedural Background

Rush was discharged from his job with Kimco Corporation ("Employer") on July 21, 2009. Upon discharge, Rush filed a claim for unemployment benefits, which a deputy for the Division of Employment Security denied. The deputy determined that Employer discharged Rush for misconduct connected with work, thereby disqualifying Rush from receiving unemployment benefits. Rush appealed the

deputy's decision to the Appeals Tribunal ("Tribunal"). On October 7, 2009, the Tribunal held a hearing via a telephone conference in which Rush and Employer's retail manager, Anthony Lee McMillin, testified. The following relevant facts were presented to the Tribunal during the hearing.

Rush was employed from January 26, 2007, to July 21, 2009, as a general cleaner for Employer. This was Rush's second period of employment with Employer. His first period of employment ended sometime in July 2006. Employer is a service-industry enterprise that provides cleaning services for various clients, one of which is Kraft Foods. Rush's responsibilities included sweeping, mopping, cleaning restrooms, wiping down tables, and taking out trash.

On June 26, 2009, Rush received a written warning for falsifying documentation regarding his work hours. The incident that actually led to Rush's termination occurred on July 12, 2009, when Rush violated Employer's work rule ("the work rule") that prohibited discussing personal or work-related conflicts or problems with clients. The incident in question involved a discussion Rush had with a Kraft shift supervisor ("the client") to whom Rush disclosed his receipt of the written warning. Rush also told the client that another Kimco employee had recording devices in his office and on the work premises. Employer terminated Rush for violating the work rule. However, Rush maintains that he was unaware that Employer had a rule against speaking to clients about work-related problems.

At the hearing, McMillin stated that Rush received an employee handbook containing the rules and regulations at the start of his employment. Employer's written guideline specifically stated that employees should "[n]ever discuss personal or work-related conflicts or problems with customers." McMillin further testified that employees are required to sign a form indicating agreement to abide by the rules and regulations contained within the handbook, and Rush signed the same on June 1, 2006, during his first period of employment. McMillin testified that Rush acknowledged receiving another copy of the employee handbook at the start of his second period of employment; however, no corroborating evidence was presented. Although McMillin testified that Rush had not previously been counseled or disciplined regarding the work rule, he maintained that Rush knew or should have known that it was a violation to speak to customer clients about work-related problems.

Rush testified that he was unaware of the work rule prohibiting discussion of work-related issues with clients. Rush acknowledges receiving and signing an employee handbook during the first period of employment in 2006, but he maintains that he did not receive the same during his second employment period. Further, Rush maintains that he had not received any prior training regarding the rule, nor had he been previously reprimanded for conduct violating the rule. While Rush admits to having the conversation with the client regarding another Kimco employee, he argues that doing so was an isolated incident of poor judgment and not an act of willful misconduct.

Following the hearing, the Tribunal found that Employer discharged Rush for violating the work rule. Specifically, the Tribunal found that Rush was aware of the work rule and that he "willfully and intentionally violated the employer's rule prohibiting employees from discussing work-related conflicts or problems with customers." The Tribunal disqualified Rush for

waiting week credit and unemployment benefits.

Rush filed an application for review of the Tribunal's decision. The Commission affirmed the Tribunal's findings that Rush was discharged for misconduct connected with his work. However, the Commission supplemented the Tribunal's findings with additional facts and analysis. The Commission found that the Tribunal's finding that Rush was aware of the work rule was incorrect in that Rush affirmatively denied having knowledge of the rule. Consequently, the Commission found that Rush's actions amounted to misconduct connected with work because his conduct "demonstrated *negligence in such a degree as to manifest culpability,* not because he willfully and intentionally violated employer's rule." (Emphasis added.) This appeal follows.

## Standard of Review

■ We may not reverse, remand, or set aside the Commission's decision unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision was not supported by facts, or the decision was not supported by sufficient competent evidence in the whole record to warrant the making of or the denial of the award. § 288.210. " 'As the trier of fact, the Commission may choose to believe or disbelieve all or none of the testimony of any witness.' " *Scrivener Oil Co. v. Crider,* 304 S.W.3d 261, 266 (Mo. App. S.D.2010) (quoting *Powell v. Div. of Emp't Sec.,* 669 S.W.2d 47, 50 (Mo.App. W.D.1984)). " 'The Commission's findings as to fact[s], if supported by competent and substantial evidence, in the absence of fraud, are conclusive.' " *Id.* (quoting *Simpson Sheet Metal, Inc. v. Labor & Indus. Relations Comm'n,* 901 S.W.2d 312, 313 (Mo.App. S.D.1995)). This court "is not bound by the Commission's conclusions

of law or the Commission's application of law to the facts." *McClelland v. Hogan Pers., L.L.C.,* 116 S.W.3d 660, 664 (Mo. App. W.D.2003). "To the extent an appeal involves questions of law, no deference is given to the Commission." *Peoples v. ESI Mail Pharmacy Servs., Inc.,* 213 S.W.3d 710, 711 (Mo.App. E.D.2007). However, we must accept the Commission's judgment of evidence and defer to the Commission on determinations regarding the evidence and the credibility of witnesses. *Murphy v. Aaron's Auto. Prods.,* 232 S.W.3d 616, 620 (Mo.App. S.D.2007) (quoting *Silman v. Simmons' Grocery & Hardware, Inc.,* 204 S.W.3d 754, 755 (Mo.App. S.D.2006)). "The determination of misconduct connected with work is a question of law that we review *de novo." Rapid Roberts, Inc. v. Potter,* 125 S.W.3d 395, 397 (Mo.App. S.D.2004).

## Legal Analysis

■ If a person is terminated from his employment for misconduct connected with his work, that person may be denied employment security benefits under section 288.050.2, which states:

> If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the employment laws of this state or any other state as prescribed in this section.

Misconduct is defined under section 288.030.1(23) as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the

employer has the right to expect of his or her employee, or *negligence in such degree* or recurrence *as to manifest culpability,* wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

(Emphasis added.)

■■ In general, a claimant bears the burden of demonstrating that he is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove misconduct connected to work. *Miller v. Kansas City Station Corp.,* 996 S.W.2d 120, 124 (Mo. App. W.D.1999). The employer bears the burden of demonstrating misconduct by a preponderance of the evidence. *Ahern v. Lewis Café, Inc.,* 308 S.W.3d 294, 297 (Mo. App. E.D.2010).

Under the definition of misconduct set out in section 288.030.1(23), the violation of a reasonable work rule can constitute misconduct. *Rapid Roberts,* 125 S.W.3d at 397–98. However, there is a "vast distinction" between a violation of an employer rule that would merely justify termination and a violation of an employer rule that would justify termination *and* a denial of unemployment benefits under the "misconduct connected with the claimant's work" standard set by section 288.050.2. *McClelland,* 116 S.W.3d at 665 (quoting *Pemiscot County Mem'l Hosp. v. Mo. Labor & Indus. Relations Comm'n,* 897 S.W.2d 222, 226 (Mo.App. S.D.1995)). A reasonable work rule serves as a relevant factor in determining if the behavior at issue is in fact misconduct and if such misconduct is connected with work; however, violation of a reasonable work rule is not dispositive proof of misconduct connected with work. *Id.*

In this case, Employer must not only demonstrate a violation of a work rule of significant import to constitute misconduct and thus support the denial of unemployment benefits, but Employer must also prove that the denial of benefits is appropriate when the employee was unaware of the rule. As previously noted, we are bound by the Commission's findings of fact if they are supported by competent and substantial evidence. *Scrivener Oil,* 304 S.W.3d at 266. The Commission affirmed the Tribunal's decision, but supplemented the Tribunal's findings of fact. The Commission concluded that the Tribunal's finding that Rush was aware of Employer's work rule was incorrect. The Commission made specific factual findings that (1) Claimant was not aware of Employer's rule, and (2) Claimant did not willfully or intentionally violate Employer's work rule, concluding that Rush "demonstrated negligence to such a degree as to manifest culpability." There is competent and substantial evidence to support the Commission's factual findings. Thus we must now decide whether Rush's negligent conduct is such that it demonstrated manifest culpability under section 288.050.2.

■ Generally, a finding of misconduct under section 288.030.1(23) requires evidence that a claimant " 'willfully violate[d] the rules or standards of employer' " and that "[his] actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job." *Hoover v. Cmty. Blood Ctr.,* 153 S.W.3d 9, 13 (Mo.App. W.D.2005) (quoting *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813, 818 (Mo. App. W.D.2004)). But section 288.030.1(23) sets out several criteria upon which a finding of misconduct may be based, including, *"negligence in such degree* or recurrence *as to manifest culpability."* (Emphasis added.) As we have recently held, cases noting that "mere" or

"simple" negligence are not "misconduct" under section 288.030.1 do not change the fact that there is a *degree* of negligence that the statute explicitly recognizes as "misconduct." *Wright v. Casey's Mktg. Co.,* 326 S.W.3d 884, 887–90 (Mo.App. W.D. 2010).[1] In *Wright,* we held that, when the employer considered a work rule very important and had heavily emphasized it to employees, the negligent violation of the rule could constitute negligence to a degree as to manifest culpability, thus qualifying as "misconduct" under section 288.030.1. *Wright,* 326 S.W.3d at 889–90. Therefore, although "misconduct" *generally* requires willful intent or a conscious disregard of the employer's rules, *see Dixon v. Div. of Emp't Sec.,* 106 S.W.3d 536, 541 (Mo.App. W.D.2003), negligence will meet the statutory definition of misconduct provided that it is to "such [a] degree . . . as to manifest culpability." § 288.030.1(23); *see also Wright,* 326 S.W.3d at 889–90. The question before us is whether Rush's conduct met that standard.

▮▮▮ In construing the meaning of a statute, we give terms their common and ordinary meanings. *Huber v. Wells Fargo Home Mortg., Inc.,* 248 S.W.3d 611, 614 (Mo. banc 2008). "Manifest" is defined as "[t]o show or demonstrate plainly." THE AMERICAN HERITAGE DICTIONARY 1064 (4th ed.2006). "Culpable" is defined as "[d]eserving of blame or censure as being wrong, . . . improper, or injurious." *Id.* at 442. Therefore, to satisfy the "negligent in such degree . . . as to manifest culpability" standard of section 288.030.1(23), the employee's conduct must have been shown plainly to be wrong, improper, or injurious. *See Wright,* 326 S.W.3d at 889–90 (holding that the employee's alleged negligence satisfied the statutory standard because the

employer had placed great emphasis on the subject rule and the employee was aware of that). In making this determination, it is relevant, though not dispositive, that the employee's alleged misconduct was an isolated incident. *See Yellow Freight Sys. v. Thomas,* 987 S.W.2d 1, 4 (Mo.App. W.D.1998) ("[A]n *isolated* act of *simple* negligence is not, as a matter of law, misconduct connected with work.") (emphasis added).

Here, Rush did not act willfully, nor did his actions satisfy the "negligent in such degree . . . as to manifest culpability" standard. The Commission explicitly found that Rush did not act willfully. The Commission found that Rush was not aware of the rule that prohibited him from discussing with clients his conflicts with the employer and/or his co-employees. *Cf. Wright,* 326 S.W.3d at 889–90 (where the employee was clearly aware of the subject rule). Further, in the absence of knowledge of the employer's rule, Rush's discussing his problems with a client was not *plainly* wrong, improper, or injurious so as to manifest Rush's culpability. Rush's lack of discretion was merely negligent: that is, an ordinary person under the circumstances probably would have been more discreet, but his actions were not so obviously injurious to Employer as to render Rush worthy of blame or censure.

Employer was certainly permitted to terminate Rush for his violation of the rule, but the question before us is whether Rush committed "misconduct" so as to justify a denial of benefits. As explained, negligence alone does not qualify as "misconduct," and Rush's indiscreet conversation did not rise to "negligen[ce] in such [a] degree . . . as to manifest culpability." § 288.030.1(23).

---

1. Although we found the employee's conduct to have been willful in this case, we also held in the alternative that the employee's conduct, even if described as negligence, would satisfy the "degree" of negligence contemplated by section 288.030.1(23).

Accordingly, we find the Commission erred in affirming the Tribunal's decision that Rush committed misconduct connected with work as defined by section 288.030.1(23) because the facts relied on by the Commission, which we accept as conclusive, do not support the conclusion that Rush acted negligently to a degree as to manifest culpability.

### Conclusion

Rush acted neither willfully nor with the degree of negligence sufficient to justify a finding of "misconduct" under section 288.030.1(23). The Commission therefore erred in denying Rush benefits. We therefore reverse and remand for proceedings consistent with this opinion.

JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges, concur.