**Brittany HOOCK,
Claimant/Respondent,**

v.

**MISSOURI DEPT. OF REVENUE,
Employer/Appellant,**

and

**Div. of Employment Security,
Respondent.**

**No. ED 97683.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 4, 2012.

Application for Transfer Denied
Nov. 20, 2012.

---

**10.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Trevor S. Bossert, Jefferson City, MO, for appellant.

Shelley A. Kintzel, Jefferson City, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Presiding Judge.

The Director of Revenue appeals the decision of the Labor and Industrial Relations Commission declaring Brittany Hoock (Claimant) eligible for unemployment benefits after she was terminated from her position with the Missouri Department of Revenue for sending inappropriate personal emails from her workstation. We reverse and remand for entry of an award denying benefits.

### Background

The facts are undisputed. Claimant was employed by the Department as a revenue processing technician. On her first day of work, March 16, 2010, and again on October 13, 2010, Claimant signed an Employee Acknowledgment of Administrative Policy stating that the Department's policy manual was available on its internal website and Claimant assumed responsibility to familiarize herself with and comply with the policies therein. As relevant here, policy 1.32 provides as follows:

1(D) Department equipment shall not be used in a manner that is harassing, embarrassing, indecent, profane, obscene, or intimidating to other personnel or members of the public.

1(E) Department equipment is intended for official use.

2(A) Employees may only make and receive personal electronic communications at work that are urgent or extremely difficult or impractical to schedule outside of work hours.

2(B) Electronic mail is intended for business use, and all such mail or other electronic messages are the property of the Department.

2(H) Employees who engage in the unauthorized use of Department equipment may receive disciplinary action, up to and including termination.

In addition to the foregoing, the Department's computer log-in procedure included

a daily reminder that the computer system exists for the purpose of conducting State business and is subject to monitoring. Users must acknowledge this warning and consent to monitoring by clicking "OK" in order to log on to their computers.

In October 2010, the Department was served with a warrant authorizing law enforcement to seize the computers of Claimant and two co-workers in connection with an investigation into criminal harassment charges filed by a member of their community. The Department assigned an internal investigator, Jim Mead, to review Claimant's email records, and Mead determined that Claimant had exchanged personal emails with her coworkers and the alleged harasser using Department computers during work hours. The record contains 33 messages from Claimant's Department email address between October 15 and 20, 2010, just days after Claimant renewed her Employee Acknowledgment of Administrative Policy. A detailed recitation of the correspondence is unnecessary, but it consists primarily of profane and spiteful comments about the victim[1] and glorification of the criminal conduct perpetrated against the victim.[2] On behalf of the Department, Mr. Mead would later testify that such messages are considered indecent and inappropriate use of government computers, and that some could be interpreted to encourage further harassment of the victim. Claimant was terminated for improper use of Department equipment, including, as specified in the notice, "sending embarrassing and indecent messages, and participating in and encouraging a course of conduct that included sending harassing, embarrassing, indecent, profane, obscene, and intimidating messages to members of the public."

Claimant sought unemployment benefits, and a deputy for the Division of Employment Security determined that Claimant was not disqualified from receiving benefits because she was not discharged for misconduct. The Appeals Tribunal upheld the deputy's determination, reasoning that Claimant did not knowingly violate Department policy because, despite signing the acknowledgment, she had never actually read the policy, and it was common practice for employees to send personal emails at work. As such, her violation did not rise to the level of willful or deliberate misconduct.

The Commission affirmed and adopted the Tribunal's decision and wrote a supplemental decision finding that the emails were nothing more than "mean-spirited but innocuous gossip," which did not amount to "conduct that was so inappro-

---

1. *e.g.,* "So is she pregnant or who?!" "[I]t's sad her poor son has to deal with it til he's 18. I'm sure we could ask him about all her boyfriends but he'd probably get confused since there's been so many in and out." "LMAO! [acronym for laughing my ass off] I'm going to hell." OMG [acronym for oh my God] that would be hilarious to say that!" "I'm sure the whole town ... know[s] she's worthless and lives off the state." "No shit! She's a worthless piece of crap." "LOL, that's funny!"

2. *e.g.,* "Have you heard who did that to her house? I think it's hilarious! Sucks that you got accused and had to deal with all the drama. You see her car?" "No, it wasn't me! I wouldn't do anything to the house cause it's not hers." "I just wanna know who actually did her garage door! LOL!" [acronym for laughing out loud]. "Yeah, she showed up at the house last night with tuls wrote on her back glass. What a great parent she is! Yeah, I know, we seen her there! ... If looks could kill I would probably be dead right now! LOL!" "Yeah, 'cause he can't press any charges against you ... well, Mandi that is. LOL." "LOL this is hilarious." "Well yeah, no one can find out! ... She said she's out for blood. LOL." "Aw, so she ran to her little boyfriend with her problems ... just like she does all the time ... I love this."

priate or extreme such that claimant should have known she was placing her job in jeopardy." Although the Commission cautioned that common practice—*i.e.*, "everyone does it"—is not an excuse for violating policy, ultimately, the Commission was not convinced that Claimant intentionally disregarded Department standards. This appeal follows.

## Standard of Review

Our standard of review is set forth in section 288.210 RSMo. An appellate court shall only review questions of law and may modify, reverse, remand or set aside a decision of the Commission only if the Commission acted without or in excess of its powers, the decision was procured by fraud, the facts found by the Commission do not support the decision, or there was not sufficient competent evidence in the record to warrant the decision. *Id.* In the absence of fraud, the findings of fact made by the Commission within its powers shall be conclusive and binding. *Id.*

This court will uphold the Commission's decision if it is supported by competent and substantial evidence and is not contrary to the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo.2003). To determine whether the decision is supported by competent and substantial evidence, we examine the evidence in the context of the whole record. *Id.* "[W]e defer to the Commission on issues concerning credibility and the weight to be given conflicting evidence." *Hughey v. Chrysler Corp.*, 34 S.W.3d 845, 846 (Mo. App.2000). However, this Court reviews questions of law independently and is not bound by the Commission's conclusions of law or its application of the law to the facts. *Grubbs v. Treasurer of Missouri as Custodian of Second Injury Fund*, 298 S.W.3d 907, 910 (Mo.App.2009).

## Discussion

A claimant is disqualified from unemployment benefits if she was discharged for misconduct connected with her work. § 288.050.2. In its sole point, the Department asserts that the Commission erred in concluding that Claimant's actions did not rise to the level of misconduct as defined under Missouri law. Whether a claimant's actions were "misconduct" is a question of law, so our review is *de novo*. *Wilson v. Q Stop III*, 268 S.W.3d 467, 469 (Mo.App. 2008). "Misconduct" is defined as:

> An act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

288.030.1(23).

The Department relies on *Ernst v. Sumner Group, Inc.*, 264 S.W.3d 669 (Mo.App. 2008). Ernst was terminated for sending sexually explicit and racially derogatory emails from his work computer in violation of Sumner's policy. Similar to the present case, the policy stated that the computer system was company property and was monitored constantly to ensure appropriate business use. The policy further specified that company computers should not be used to transmit personal, frivolous, or sexual material. The Commission found no misconduct in that the policy didn't specifically prohibit Ernst's activities (which it clearly did) and, according to Ernst, such behavior was common in his workplace. This court rejected both rationales, finding that Ernst's conduct fell

squarely within the policy language, and the fact that it was common practice was no justification. *Id.* at 673. Further, this court deemed Ernst's violation deliberate in that he "signed an acknowledgment form indicating his awareness of the policy and its restrictions, yet he sent the materials anyway." *Id.* at 672. The Department argues that *Ernst* is authoritative in that it involved an email policy similar to the Department's policy and an acknowledgment form imputing the employee's awareness of the policy, and it instructs that the "everyone does it" defense is unavailing.

Claimant attempts to distinguish *Ernst* in that Sumner's acknowledgment form purported to confirm Ernst's actual awareness of the policy, whereas here the Department's form only confirmed the availability of a policy, which Claimant merely agreed to read at some later time. Thus, Claimant essentially asserts that her actions did not constitute misconduct because she was actually unaware of the Department's policy prohibiting her actions because she never bothered to read the policy. In other words, Claimant suggests that her failure to read the policy—after twice committing in writing to do so and with daily reminders over the course of seven months—should operate as a full and valid excuse for egregiously violating the very policy she agreed to read. We reject the notion that Missouri employment security law intends to reward an employee's voluntary and perpetual ignorance of employer policies in such a manner. Even the cases cited by Claimant do not support such an interpretation.

Claimant relies primarily on *McClelland v. Hogan Personnel, LLC*, 116 S.W.3d 660 (Mo.App.2003). There, a truck driver was terminated for failing to follow a policy requiring drivers to check the trailer hook-up before each departure. Although McClelland checked the hook-up before his first delivery of the day in question, he neglected to check it again, and the trailer detached causing a loss of cargo. When hired, McClelland had signed an acknowledgment stating that he read and understood Hogan's policy manual, but he testified that he never actually received the manual, was unaware of the rule, and had never observed other drivers performing repeat inspections. The Western District held that McClelland's error did not amount to misconduct because, although an employer has a right to expect an employee to read its safety manual and follow its rules, the evidence did not demonstrate a willful disregard of Hogan's interest or a deliberate violation of its rules. *Id.* at 666. Claimant also cites *Rush v. Kimco*, 338 S.W.3d 407 (Mo.App.2011). There, Rush was terminated in 2009 for violating Kimco's policy forbidding employees from discussing personal or work-related conflicts or problems with customers. Rush was first hired for a brief period in 2006, at which time he received a policy manual and signed a form agreeing to abide by it. He was re-hired in 2007 and testified that he did not receive a handbook or sign a form at that time, and that he had no actual knowledge of the policy at either time. Providing a road map for our analysis here, the Western District noted that, on these facts, Kimco "must not only demonstrate a violation of a work rule of significant import to constitute misconduct . . . [but also that] the denial of benefits is appropriate [even] when the employee was unaware of the rule." *Id.* at 411. As such, the court sought to determine whether Rush's conduct was negligent to such a degree as to manifest culpability under section 288.505.2. *Id.* While recognizing that "there is a *degree* of negligence that the statute explicitly recognizes as 'misconduct,'" ultimately the court held that Rush's violation did not rise to that level because it was isolated, unwitting, not

plainly wrong or improper, and not so obviously injurious to the employer as to manifest culpability. *Id.* at 412. (emphasis original)

Though cited by Claimant, *McClelland* and *Rush* provide factual contrasts that actually support the Department's position in that those cases involve isolated and relatively innocent transgressions; essentially, the circumstances taken as a whole do not warrant a determination of misconduct. Here, however, Claimant's behavior fairly *can* be described as "plainly wrong, improper, or injurious so as to manifest [her] culpability." *Id.* Despite the daily reminder that the computer system was for State business and two signed commitments to read and comply with Department policy, after neglecting to read it in seven months on the job, Claimant, while on the clock and from her professional email address as a public servant of this State, used profanity, insulted a taxpayer, celebrated and potentially encouraged criminal conduct against that taxpayer, caused a warrant to be served on her employer, and wholly disregarded any risk of further harm to the victim, stain on the Department, or damage to public confidence. We disagree with the Commission's view that the emails were harmless and reject Claimant's suggestion that such behavior isn't misconduct absent actual knowledge of a policy to the contrary. Her conduct not only demonstrates negligence in such a degree as to manifest culpability but also shows a disregard of standards of behavior that the State has the right to expect of its employees.

## Conclusion

Claimant's misuse of Department equipment and resulting violation of Department policy, her negligence to a degree of culpability, and her disregard for basic standards of workplace behavior all consti-tute misconduct connected with work, and therefore she is disqualified from receiving unemployment benefits. The Commission's decision is reversed and the cause is remanded for entry of an award in accordance with this opinion.

SHERRI B. SULLIVAN, J., concurs.

GLENN A. NORTON, J., dissents.

GLENN A. NORTON, J., dissenting.

I respectfully dissent. Applying our de novo review to the determination of whether Claimant's actions constituted misconduct, the majority finds that Claimant's conduct demonstrates negligence in such a degree as to manifest culpability and shows a disregard of standards of behavior that the Department has the right to expect of its employees, distinguishing Claimant's actions from the "isolated and relatively innocent transgressions" of the claimants' conduct in *McClelland* and *Rush.*

Although Claimant's conduct *could* be construed as "plainly wrong, improper, or injurious so as to manifest her culpability," "[an appellate] Court's review of whether the record establishes misconduct must be guided by the legislature's mandate that the unemployment security law 'shall be liberally construed to accomplish its purpose to promote employment security ... by providing compensation to individuals in respect to their employment.'" *Fendler v. Hudson Services,* 370 S.W.3d 585, 591 (Mo. banc 2012) (Teitelman, J., dissenting) (quoting section 288.020.2 RSMo 2000). Adhering to that standard, I would hold that Claimant's conduct did not rise to the level of negligence to such a degree as to manifest culpability or show a disregard of standards of behavior which the Department has the right to expect. *See id.* at 592 (arguing that a disputed inference should be construed in favor of the claim-

ant). Although Claimant's conduct justified the Department's termination of her employment, it did not rise to the level of misconduct connected with work to justify denying her unemployment benefits. *See Comeaux v. Convergys Customer Management Group, Inc.,* 310 S.W.3d 759, 763 (Mo.App. E.D.2010) (stating that "[t]here is a vast distinction between conduct that would justify an employer terminating an employee and conduct that is misconduct for the purposes of denying unemployment benefits"). Accordingly, I would affirm the Commission's decision finding Claimant eligible for unemployment benefits.