

In the

Missouri Court of Appeals

Western District

DAWN STEWART,

             **Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY,**

             **Respondent.**

**WD76338**

**OPINION FILED:**

**FEBRUARY 4, 2014**

**Appeal from the Labor and Industrial Relations Commission**

**Before Division I: Alok Ahuja, P.J., Thomas H. Newton, Anthony Rex Gabbert, JJ.**

Dawn Stewart appeals the Labor and Industrial Relations Commission's order concluding that Stewart was overpaid unemployment benefits in the amount of $368.00. Stewart contends that the Commission's decision was not supported by competent and substantial evidence because the determination was made in the absence of all records material to the issue of overpayment and was based on inaccurate Division of Employment Security records which falsely claimed that Stewart received a total of $140.84 in paid personal time wages. We reverse.

On February 20, 2012, Stewart filed an initial claim for unemployment benefits and the Division of Employment Security established a benefit year for her, with a weekly benefit amount of $230.00. Stewart was employed part-time for Wal-Mart Associates, Inc.,

and received partial benefits. On September 25, 2012, a Division deputy determined that for the week ending February 25, 2012, through the week ending August 4, 2012, Stewart was overpaid benefits in the amount of $368.00. Stewart appealed this determination to the Appeals Tribunal and, after a review hearing, an appeals referee affirmed the deputy's determination and concluded that "[t]he evidence shows that the claimant claimed benefits and incorrectly reported wages payable to her (including wages in the form of vacation pay) for the weeks at issue." The referee determined that in some wage reporting, Stewart rounded her wages down to the nearest dollar, which caused her entitlement to go up accordingly. Therefore, the referee concluded that Stewart "was overpaid, in part, because the claimant's benefit entitlement was rounded to the nearest lower f[u]ll dollar amount consistent with RSMo. Section 288.060.3." The referee found that additional overpayment resulted from Stewart's failure to report wages received for some days that she did not physically work, but for which Wal-Mart paid her personal leave or vacation pay. The referee concluded that "[f]or the week of February 19, 2012 through February 25, 2012, the claimant was overpaid benefits because later discovered overpayments prevented the claimant from being considered an exhaustee of benefits." As a result, the referee determined that Stewart was overpaid $124.00 for the waiting week. Stewart appealed the referee's decision to the Commission which affirmed the decision of the Appeals Tribunal. Stewart appeals.

Appellate review of the Commission's decision is governed by Section 288.210, RSMo 2000. *Rush v. Kimco Corp.*, 338 S.W.3d 407, 410 (Mo. App. 2011). Upon appeal, no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the Commission shall be conclusive. § 288.210, RSMo 2000. We review only questions of law and may not disrupt the Commission's decision unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision was not supported by facts, or the

2

decision was not supported by sufficient competent evidence based on the entirety of the record. *Id.*

In Stewart's sole point on appeal, she contends that the Commission's conclusion that she was overpaid $368.00 in unemployment benefits was not supported by competent and substantial evidence because the determination was made in the absence of all records material to the issue of overpayment and was based on inaccurate Division of Employment Security records which falsely claimed that Stewart received a total of $140.84 in paid personal time wages.[1] She argues that Wal-Mart's Earnings History Report for the biweekly period ending July 27, 2012, confirms that she was not paid $140.84 for 16 hours of personal time for July 21 and July 22. Stewart testified at the review hearing that her paystub did not reflect being paid eight hours of personal time on July 21, 2012, or eight hours of personal time on July 22, 2012. Stewart provided the Commission with a copy of her year-end Statement of Earnings, dated December 20, 2012, that Stewart contends proves that for 2012 she only received $80.18 in personal time pay. (Stewart's paystubs and Statement of Earnings were not admitted into evidence at the hearing, and are not a part of our record on appeal, because Stewart failed to timely disclose the exhibits prior to the hearing.)

In response, the Division asks us to disregard all factual allegations that are not supported by the hearing record and that conflict with Wal-Mart's wage records. In so doing, we find Wal-Mart's wage records conflicting. Pages 70 through 82 of the transcript on appeal contain computer generated Timeclock Archive Reports from Wal-Mart. Pages 66 through 69 of the transcript contain handwritten Paid Claims Accuracy Employer Wage Verification forms

---

[1]Stewart does not dispute the Commission's conclusion that she was overpaid, in part, for erroneously rounding her wages down to the nearest dollar, rather than rounding up, which caused her benefit amount to increase accordingly.

(PCA's), apparently completed by Wal-Mart in response to the Division's inquiries, which represent a handwritten summary of the Timeclock Archive Reports. These documents show dates and hours worked by Stewart; the PCA's calculate the amount purportedly paid to Stewart weekly, based on her hourly wage, and the dates and hours reflected in the Timeclock Archive Reports.[2] These records show that for the pay period ending July 27, 2012, Stewart recorded 32.56 hours of time – 16.56 actual hours worked and 16.00 hours personal time. Stewart does not dispute that she worked, and was paid for, 16.56 of those hours which represent the dates of July 14, 2012, and July 15, 2012. The Timeclock Archive Report on page 81 of the transcript shows that Stewart worked 8.12 hours on Saturday, July 14, 2012, and 8.44 hours on Sunday, July 15, 2012. Stewart disputes that she was paid 16 personal hours for July 21, 2012, and July 22, 2012. The Timeclock Archive Report on page 81 of the transcript contains an "8" for each of these days in the category of "personal hours." We note that the Timeclock Archive Report, apparently an internal Wal-Mart document, does not reflect any *payments made to the employee* for the hours recorded.

With regard to the dates of July 21 and July 22, 2012, Barbara Barlish, a witness for the Division at the review hearing, referenced the PCA's when testifying that Stewart underreported earnings for the weeks that included the disputed dates of July 21 and July 22. When asked if the PCA's contained the only weekly breakdown of Stewart's wages, Barlish stated, "That was all that I actually saw," and indicated that the Timeclock Archive Reports did as well. When Barlish was asked if she compared "the time entries with what the employer reported," Barlish stated,

---

[2]We note that the days of the weeks listed on the PCA, a Division form completed by the employer, do not correspond exactly with the weeks set forth on Wal-Mart's Timeclock Archive Reports, as Wal-Mart's pay weeks start on Saturday and end on Friday, and the Division's weeks on the PCA's start on Sunday and end on Saturday.

4

"On one week. I did not do the others." Although Barlish's testimony is somewhat unclear, it appears that she did not compare the hours and wages reported on the PCA's to any "other wage information provided by the employer," because Wal-Mart's pay cycle did not correspond to the daily reporting on the Timeclock Archive Reports. Based on the Timeclock Archive Reports and the corresponding PCA's, Barlish testified that Stewart received $286.73 gross wages for the pay period ending July 27, 2012. Stewart reported receiving $143.00 for this pay period.

While the Timeclock Archive Reports and PCA's generated from those reports would appear to support the Commission's conclusion that Stewart was paid for the personal hours and, therefore, was overpaid unemployment benefits when she failed to report these wages, we are bound to consider the entirety of the record. In so doing, we find that the Division's own evidence contains records that contradict the aforementioned Timeclock Archive Reports and corresponding PCA's. Specifically, pages 56 through 59 of the transcript contain Stewart's Earnings History Reports from Wal-Mart. These reports document Stewart's pay dates, hours worked per pay period, rate of pay, gross wages, deductions, and net pay. Pages 53 and 54 of the transcript contain PCA's that reflect a handwritten summary of the Earnings History Reports and include Stewart's pay dates and the gross taxable wages Stewart received on each of those dates. These records show that Stewart received a biweekly paycheck and Stewart's rate of pay was $8.30 per hour. Based on these records, Stewart was paid $159.67 for the pay period ending July 27, 2012, which encompasses the dates of July 14, 2012, through July 27, 2012.[3] The records reflect that this amount includes 16.56 hours of regular pay totaling $137.45 and $22.22

---

[3]*See also* Wal-Mart's Timeclock Archive Report on page 81 of the transcript. It identifies July 27, 2012, as the date the pay period ends and shows that the pay period includes July 14, 2012 through July 27, 2012.

designated as "other." At least part of this $22.22 appears to represent a $1.00 per hour shift differential that Stewart received when working Sundays.[4]

Thus, Wal-Mart's Earnings History Report and corresponding PCA, that reflect that Stewart worked 16.56 hours and was paid $159.67 gross wages for the pay period that includes the disputed July 21 and July 22 dates, conflict with Wal-Mart's Timeclock Archive Report and corresponding PCA that reflect that Stewart recorded 32.56 total hours and was paid $286.73 for this time period. We cannot reconcile these differences in the first instance. We note, however, that these records, considered as a whole, may well justify the Commission in crediting Stewart's testimony. The Earnings History Report – which is consistent with Stewart's testimony – is the only internal Wal-Mart report in the record which actually reflects the actual wages paid to Stewart (including taxes and other deductions). On the other hand, the Timeclock Archive Report records only the hours recorded for an employee; it does not reflect whether any payments were made to the employee based on those hours. While the Timeclock Archive Report for the pay period in question reports that Stewart had 16.56 "regular" hours, and 16.00 "personal" hours, it does not state whether Stewart was actually paid for *both* the "regular" and "personal" hours, and if so, at what rate. We also note that, from the records provided to us, Stewart worked for Wal-Mart *only* on Saturdays and Sundays; the 8.00 "personal" hours recorded for Stewart on Saturday, July 21 and Sunday, July 22, 2012, may merely reflect that Stewart did not work on these days on which she was regularly scheduled, and may not reflect any payment of wages to her for those dates. While Wal-Mart prepared a response to the Division's inquiry (a PCA) which calculated Stewart's wages for July 2012 as if she were paid at

---

[4]*See* page 69 of the appeals transcript.

her straight-time rate for these "personal" hours, we do not know who prepared the PCA, or on what basis the person completing the PCA concluded that Stewart had in fact been paid for the "personal" time.

As we have noted, Stewart disputed that she had been paid any wages for the dates of July 21 and 22, 2012, and stated that the Division's claim that she had been paid for those dates conflicted with her paystubs. Stewart's claim is supported by Wal-Mart's Earnings History Report for the time period in question. Yet, despite Stewart's testimony, and the apparent conflict in the employer's records on this central question, the Commission made no findings with regard to this conflicting evidence. We recognize that the Timecard Archive Report, and the PCA prepared from it, might – in isolation – be deemed substantial evidence to support the Commission's determination that Stewart had been overpaid. This does not end the matter, however.

> [A]s a general rule, where an administrative body's decision is based on substantial evidence, it is not arbitrary and unreasonable. One exception to the general rule occurs when an agency completely fails to consider an important aspect or factor of an issue before it.

*Chipperfield v. Mo. Air Conservation Comm'n*, 229 S.W.3d 226, 248 (Mo. App. 2007) (internal citations omitted). We cannot conclude that the Commission's findings were supported by sufficient competent evidence where the Division's own evidence conflicts and, in part, supports Stewart's contentions, and the Commission failed to address, or even acknowledge, the conflict in any fashion. The judgment of the Commission is reversed and the cause is remanded for findings and conclusions reflecting a reconciliation of these differences and, if necessary,

7

recalculation of Stewart's benefit overpayment.

 

 

_____
Anthony Rex Gabbert, Judge

All concur.

8