

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **CPR PLUS, LLC,** | **WD82146** |
| Appellant, | **OPINION FILED:** |
| v. | **APRIL 16, 2019** |
| **DIVISION OF EMPLOYMENT SECURITY,** | |
| Respondent. | |

**Appeal from Labor and Industrial Relations Commission**

**Before Special Division: Edward R. Ardini, Jr., Presiding Judge, Anthony Rex Gabbert, Judge, Kelly C. Broniec, Special Judge**

CPR Plus, LLC ("CPR Plus") appeals from three consolidated decisions by the Missouri Labor and Industrial Relations Commission ("Commission"), which found that instructors associated with CPR Plus are employees rather than independent contractors. On appeal, CPR Plus contends the Commission erred in deciding affiliated instructors are employees of CPR Plus, arguing there is no competent and substantial evidence in the record as a whole supporting this determination. We affirm.

## Factual and Procedural History[1]

Stacy Ann Graff-Baehmann was in business twenty years as a sole proprietor before creating CPR Plus in January 2015. CPR Plus is a business providing instructors to conduct training classes in CPR, and other treatment related to emergency situations, to various clients. All instructors are required to be certified to teach CPR Plus classes. CPR Plus is an American Heart Association (AHA) training center which certifies CPR Plus to provide AHA training. The AHA requires all AHA-certified instructors to be aligned with an AHA training center in the instructor's region. Each AHA training center has the responsibility of ensuring that all the AHA-certified instructors aligned with that training center ("member instructors") comply with the AHA guidelines in providing CPR instruction. Member instructors are not required to provide instruction services for the training center. In the case of CPR Plus, not all member instructors who have been AHA-certified by CPR Plus contract with CPR Plus to provide services for CPR Plus. All instructors at issue in the Commission's investigation into employee versus independent contractor status, however, contract (or contracted) with CPR Plus to provide services for CPR Plus.[2] Two thirds of CPR Plus's business is offering classes; CPR Plus also sells first aid supplies.

A client or customer contacts CPR Plus requesting a CPR class be held on a specific date. A certified instructor teaches the class, and then has participants fill out required AHA forms. The forms are used to process cards showing the attendee successfully completed the CPR class. CPR

---

[1] We include the Findings of Fact made by the Commission as we are to accept the Commission's findings of fact as conclusive so long as they are 'supported by competent and substantial evidence' and in the absence of fraud. § 288.210. CPR Plus makes no claim of fraud, or that the Commission's Findings of Fact are not supported by competent and substantial evidence; CPR Plus's claim is that the Commission's conclusion, that CPR Plus instructors are employees rather than independent contractors, is not supported by sufficient competent evidence in the record as a whole.

[2] Unless specifically designated as "member instructor," "instructor" herein references an individual contracting with CPR Plus to provide services for CPR Plus.

Plus, as a training center, is authorized by the AHA to collect the paperwork and process the cards upon submission of the appropriate forms. CPR Plus distributes the cards to class attendees at a later date.

CPR Plus began operating in Missouri on January 13, 2015. Graff-Baehmann operates CPR Plus from her home located in Chesterfield, Missouri. Graff-Baehmann finds individuals interested in being instructors by networking and visiting internet job sites. She typically looks for individuals with a related background. Some of CPR Plus's instructors are already certified to teach the classes prior to working for CPR Plus. If they are not, CPR Plus offers the necessary training and books. The instructors purchase the materials and books needed to the complete the training to be certified. As an authorized training center, CPR Plus issues the necessary certification to those individuals.

CPR Plus and instructors negotiate an hourly rate of pay depending on the expertise of the individual. CPR Plus requires the instructor to sign a written agreement provided by CPR Plus. CPR Plus places dates, times, and locations of classes on a software program called, "When to Work." Any instructor can sign up to teach a class, or they can ask CPR Plus to schedule them for classes for a specific number of hours they desire to work. The instructors with the most experience are designated as lead instructors.

All classes are conducted at the client location which might be a medical center, nursing home, or educational facility. No services are provided at Graff-Baehmann's home. The client sometimes has the equipment necessary for the class; other times, CPR Plus provides the instructor with access to a storage locker that houses equipment. The instructors are also allowed to provide their own equipment. CPR Plus pays the instructors to clean equipment they use from CPR Plus storage. They are paid an hourly rate for the amount of time they spend cleaning, disinfecting, and

3

returning the equipment to the storage locker. The instructors are reimbursed for parking fees, if applicable, at various client locations where the classes are held.

CPR Plus supplies a spreadsheet for the instructors to fill out their hours worked. CPR Plus issues paychecks on the fifteenth and last day of the month. No taxes are withheld and an IRS form 1099 is given to instructors. CPR Plus does not provide insurance for instructors. The CPR Plus/instructor contract states that instructors are required to provide automobile insurance for the automobiles they use to travel to the class sites. CPR Plus provides no reimbursement for gasoline or training materials needed to maintain a valid certification. The instructors are not required to wear uniforms.

Each class requires a ratio of nine attendees per instructor to satisfy the AHA guidelines. If fewer attendees than planned participate, an extra instructor is told to leave, and they are paid only for the hours spent setting up the class. The time spent setting up the class is compensated; the commute time is not compensated.

Graff-Baehmann testified that most instructors have jobs as paramedics, nurses, or other health related jobs. There was no evidence before the Commission that CPR Plus instructors hold themselves out to the public as CPR instructors. The instructors are not allowed to have helpers when teaching CPR Plus classes. The instructors have a continuing relationship with CPR Plus, as they work on a reoccurring basis depending on the number of classes scheduled. Instructors decide to work as much or as little as they choose depending on the number of classes available.

The CPR Plus/instructor contract contains a non-compete provision. The instructor is prohibited from any effort to obtain business with clients of CPR Plus for a two-year period. The contract also contains a non-disclosure of trade secrets provision.

4

Graff-Baehmann periodically monitors instructors when they teach classes. The AHA requires certain basic items be covered for AHA certification, but there are optional exercises CPR Plus's instructors also cover. CPR Plus clients have indicated they appreciate the extra content in CPR Plus's classes, and instructors are advised to include the optional exercises in the classes offered by CPR Plus. Graff-Baehmann testified that she is required to periodically monitor certified instructors because CPR Plus is a training center for the AHA. An instructor, found credible by the Commission, testified that she was supervised and advised on how she was supposed to teach and what was to be covered in class, and that she was periodically monitored by Graff-Baehmann in the classroom.

Once an instructor is scheduled to teach a class, if the instructor is unable to teach the class, he or she is expected to arrange for another certified instructor to take his/her place. Otherwise, he/she is expected to work. CPR Plus must know that any replacement is suitable or certified, in order to satisfy the AHA requirements.

CPR Plus, or an instructor, may terminate the contract with thirty days written notice. However, the contract provides that CPR Plus can terminate the agreement with five days' notice if the instructor fails to perform the teaching in a "businesslike manner such as unprofessional attire, tardiness, failure to prepare documentation required; and failure to submit timely requests for compensation and reimbursement for parking expenses …"

On January 4, 2016, the Division of Employment Security ("Division") received a blocked claim for unemployment benefits from Julie Deaton, a former instructor for CPR Plus. The Division conducted an investigation, reviewed questionnaires submitted by Deaton and CPR Plus, as well as worker information provided by CPR Plus, and determined that, effective January 13, 2015, the instructors for CPR Plus were employees. The Division also determined that, effective

October 1, 2014, the instructors of Graff-Baehmann (as sole proprietor of CPR Plus) were employees. The Division found that common ownership, management, and control existed between Graff-Baehmann as sole proprietor and CPR Plus, such that CPR Plus stood in the position of Graff-Baehmann in all respects, including liability for current or delinquent contributions. On January 25, 2016, the Division mailed a determination of employment to CPR Plus.

The Division received CPR Plus's appeal of the determination on February 4, 2016. On June 8, 2016, CPR Plus provided the Division with a copy of the independent contractor agreement that each instructor is required to sign. The Division reviewed the agreement and found that the original determination of employment status was supported by the agreement. The Division found no cause for reconsideration and referred the matter to the Appeals Tribunal.

The Appeals Tribunal held a hearing on August 24, 2016. On September 26, 2016, the Appeals Tribunal issued its findings of facts and conclusions of law, affirming the Commission's determination that CPR Plus instructors are employees of CPR Plus.

CPR Plus submitted an Application for Review to the Commission, which was received on October 3, 2016. On September 7, 2018, the Commission issued its decision, affirming and adopting the decision of the Appeals Tribunal. This appeal follows.

**Standard of Review**

Appellate review of the Commission's decision is governed by Section 288.210, RSMo 2000. *Rush v. Kimco Corp.*, 338 S.W.3d 407, 410 (Mo. App. 2011). We may not disrupt the decision "unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision was not supported by facts, or the decision was not supported by sufficient competent evidence" based on the whole record. *Id.* While no deference is given the Commission regarding questions of law, the Commission is entitled to deference on determinations

6

of witness credibility.  *White v. St. Louis Teachers Union, Div. of Employment Sec.*, 217 S.W.3d 382, 388 (Mo. App. 2007).

<strong>Point on Appeal</strong>

CPR Plus contends the Commission erred in deciding that affiliated instructors are employees of CPR Plus, rather than independent contractors, arguing there is no competent and substantial evidence in the record supporting this determination.

Section 288.034.1, RSMo Cum. Supp. 2018, defines "employment," in part, as "service … performed for wages or under any contract of hire, written or oral, express or implied[.]"  Section 288.034.5 provides:

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor.  In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied.  The common law of agency right to control test shall include but not be limited to:  if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee.  If only the results are controlled, the individual performing the service is an independent contractor.

"[O]nce it is shown that an individual receives remuneration, the presumption of an employer-employee relationship is established and the 'burden of proof shifts to the employer to show that, under the common law right to control test, the worker is an independent contractor.'"  *Gateway Taxi Management v. Division of Employment Security*, 461 S.W.3d 830, 833 (Mo. banc 2015).  The Division uses 8 CSR 10-4.150(1) to interpret Section 288.034.5, applying the common law rules applicable in determining the employer-employee relationship under 26 U.S.C., Section 3306(i).  *Id.* at 834.  Further, in interpreting Section 288.034.5, the Division considers case law, Internal Revenue Service regulations and letter rulings, including the ruling that creates twenty factors for determining employment status.  *Id.*

These factors are: (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) worker's right to terminate.

*Id.* Our Missouri Supreme Court has approved these twenty factors for consideration in determining whether an entity is an employee or independent contractor. *Id.*

CPR Plus does not contend that the Commission acted without or in excess of its powers, or that its decision was procured by fraud; consequently, our review is confined to whether there is substantial evidence to support the Commission's determination that the instructors are CPR Plus employees. *Id.* "The analysis as to whether there is sufficient control to characterize a relationship as employer/employee or independent contractor is factually intensive." *Id.* at 834-835. In applying the above-listed twenty factors, the Commission exhaustively examined and applied the facts to each factor, concluding the following evidence indicative of employee-status:

1) Instructions: CPR Plus posted the date, time, and place of each class when contacted by clients and relayed this information to instructors through a computer program maintained by CPR Plus. Any instructor who signed up could not change the date, time, or location; 2) Training: CPR Plus's business provided classes that satisfied AHA guidelines, and CPR Plus required instructors of CPR Plus to teach this information as well as optional information, supervising the instructors to ensure the material was covered in a manner acceptable to CPR Plus. Optional exercises were included because it made CPR Plus's business more attractive to potential clients; 3) Integration: The instructors were an integral part of CPR Plus's business as the business primarily involved providing instructors to teach AHA certified classes. The business could not continue without the

8

services provided by instructors. The success of CPR Plus depended on the quality of the instruction and content, which necessarily meant control or the right to exercise control to accomplish this end; 4) Services Rendered Personally: Instructors were expected to personally perform their services, and instructors were expected to arrange for an appropriate substitute in the event they were unable to teach a class; 5) Hiring, Supervising, and Paying Assistants: The instructors could not hire assistants or helpers to teach CPR Plus's classes; 6) Continuing Relationship: There was a continuing relationship with the instructors, with the frequency or need for the services depending on the number of classes requested; 7) Order or Sequence Set: The guidelines of the AHA dictated that certain video and other information be covered at each class, with CPR Plus required to ensure instructors covered that material. CPR Plus required instructors to cover optional exercises; 8) Oral or Written Reports: Instructors were required to submit a spreadsheet to obtain paychecks, and complete surveys so that AHA certificates could be issued to class attendees; 9) Payment by Hour, Week, Month: CPR Plus paid the instructors an hourly rate of pay. The paychecks were issued on the 15th and last day of each month; 10) Payment of Business and/or Traveling Expenses: CPR Plus paid for parking when there were fees or meters associated with instructors teaching at some client locations; 11) Furnishing Tools and Materials: CPR Plus provided the mannequins and other equipment used to teach classes to any instructor who wished to get the equipment out of the storage locker or unit. The instructor could also provide their own equipment or use equipment provided by the client; 12) Significant Investment: There was no evidence that instructors invested in facilities; 13) Realization of Profit or Loss: There was no evidence that the instructor could realize a profit or suffer a loss; 14) Making Service Available to General Public: There was no evidence that any instructor made their services available to the general public on a regular basis. The instructors had to sign a written contract with a non-compete

9

clause and trade secrets provision; 15) Right to Discharge:  CPR Plus's contract provided that CPR Plus could terminate the instructor with five days' notice for cause, with "cause" including improper attire, tardiness, and failure to submit paperwork.

Upon reviewing the twenty factors, the Commission determined that the above fifteen support an employer/employee relationship, and the remaining five support an independent contractor relationship.  The Commission concluded that CPR Plus is an employer of the instructors because CPR Plus has the right to control the manner and means of performance of the instructors.

"There is no magic formula for determining how many factors must weigh in favor of an employee relationship."  *Id.* at 835 (internal quotation marks and citation omitted).  "The standard of review does not instruct this Court to reweigh the factors but, rather, determine whether there was substantial evidence to support the [Commission's] decision."  *Id.*  We, therefore, will not embark on a detailed reanalysis of each factor but look to the whole record in reviewing the Commission's final conclusions.  In the final analysis, the common law of agency right to control test determines the existence of an independent contractor relationship:  "If the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee.  If only the results are controlled, the individual performing the service is an independent contractor."  § 288.034.5.

The record supports the Commission's conclusion that CPR Plus maintains control over the manner and means of instructor performance by ensuring instructors teach more than what is required by the AHA, supervising classes to ensure compliance, and correcting instructors not following CPR Plus's preferred methods.  CPR Plus maintains control over the actions of instructors by retaining the right to fire anyone not abiding by CPR Plus's policy on attire,

10

timeliness, or paperwork filing. Although CPR Plus insists that it does not control the manner and means of instructors' work because clients, and not CPR Plus, dictate the time, date, and location of the performance of the instructors' services, we found this same argument unavailing in *C.L.E.A.N., LLC. v. Division of Employment Sec.*, 405 S.W.3d 613, 621 (Mo. App. 2013). In *C.L.E.A.N.*, we noted that the cleaning business informed its cleaning workers as to the customers' schedule preference and that "while the when and where aspects of a worker's cleaning assignment are determined by the client's preferences, C.L.E.A.N. maintains a certain degree of control over its workers' scheduling." *Id.* Much of the rationale we used in *C.L.E.A.N.* (concluding there was competent and substantial evidence to support a finding of employee status) is applicable here as the legal and factual issues are similar.

Although CPR Plus also contends that instructors control the manner and means of instruction because AHA guidelines and client requirements dictate instruction materials, the non-disclosure of trade secrets provision in CPR Plus's contract with instructors suggests that the instruction also includes confidential CPR Plus methods. The trade secrets provision states that CPR Plus "has substantial knowledge and experience relating to its business and customer list and that Business has expended substantial sums of money in developing valuable proprietary information and business methods." The provision requires instructors to not disclose any confidential or proprietary information of CPR Plus, or any forms, guidelines, or other documentation developed by CPR Plus, "except as required for teaching jobs [instructor] chooses to perform." This supports the Commission's conclusion that, aside from AHA's requirements, CPR Plus controls the manner and means of instruction by requiring performance under CPR Plus's established business methods. *E.P.M. Inc. v. Buckman*, 300 S.W.3d 510, 517 (Mo. App. 2009). There is no suggestion in the record that instructors are involved in any part of CPR Plus's

11

business except teaching classes. Hence, if only AHA guidelines and client requirements dictate how and what instructors teach, there would be no need for a trade secrets provision prohibiting dissemination of CPR Plus's "business methods."

The contract CPR Plus requires instructors to sign states that, once the instructor no longer works for CPR Plus, the instructor cannot (for two years) solicit, contact, or make any effort to obtain business from the customers and clients of CPR Plus. If an instructor does bring something personally unique to a class and a client is impressed with a particular instructor and desires that same instructor for a future class, the client can only obtain that instructor if the instructor still works for CPR Plus. CPR Plus, therefore, controls the manner and means the client's classes are taught by restricting client access to specific instructors. *Bargfrede v. American Income Life Ins. Co.*, 21 S.W.3d 157, 164 (Mo. App. 2000) ("Although covenants not to compete are not implicitly void and unenforceable against independent contractors, [] that type of control with other facts is some evidence of a master-servant relationship.") Although many, if not most, CPR Plus instructors maintained outside employment, there was no evidence that any instructor conducted CPR classes for outside employers.

## Conclusion

We find the Commission's analysis of the instructive factors used in determining employment status, and the Commission's ultimate conclusion that CPR Plus controlled both the results of instructors' work and the manner and means the results were to be accomplished, supported by competent and substantial evidence on the whole record.

The decision of the Commission is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.