Alecia SMITH, Appellant,

v.

FASHION POLICE, LLC, and Division of Employment Security, Respondents.

No. WD 73700.

Missouri Court of Appeals, Western District.

Dec. 6, 2011.

**470**

Charles Baldwin, Liberty, MO, for Appellant.

Katharine Shepherd–Porter, Liberty, MO, for Respondent, Fashion Police.

Robert Bedell, Jefferson City, MO, for Respondent, Div. of Employment.

Before ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Alecia Smith appeals the Labor and Industrial Relations Commission's finding that she voluntarily terminated her employment with Fashion Police, LLC, thereby disqualifying her from unemployment benefits. Smith contends that the Commission's decision was procured by fraudulent testimony and, therefore, not supported by competent and substantial evidence. We affirm the Commission's decision.

In November of 2009, Alecia Smith's employment with Fashion Police ended.[1] Smith filed a claim with the Missouri Division of Employment Security contending that she had been fired and requesting unemployment benefits. Fashion Police protested this claim and alleged that Smith quit. Fashion Police's owner, Katie Porter, filed the protest and charged that Smith left the store during the middle of her shift and left the store unattended. After Fashion Police's protest, additional statements were garnered from the parties.

Smith's statement reported that on her last day of employment she had agreed to work a shift she did not normally work. Smith was given permission by manager Jeannie Westfall to leave the store during the shift to attend a doctor's appointment. While away, an alarm sounded at the store. The alarm company contacted the owner of the store who was out of town. Smith surmised that "the owner got on to Jeannie about all of this and so Jeannie fired me." Smith stated that, as she was preparing for work the next morning, she received a telephone message from Westfall stating that "it was not working out and don't bother coming in today." Smith understood that to mean that she was fired.

Fashion Police's statement reported that Smith resigned via voicemail to Westfall. Westfall stated that, the morning after receiving Smith's resignation, she called Smith to "say that was fine and wished her luck." With regard to the aforementioned alarm disruption, Westfall stated: "[m]aybe she did think she was going to be

---

1. Alecia Smith was employed by Fashion Police as a sales clerk for four months prior to her last day of employment.

fired for the incident, but I did not fire her. I would have had to talk to the owner before I could have fired."

On October 4, 2010, a deputy with the Division of Employment Security denied Smith's unemployment claim and concluded that Smith left work voluntarily and without good cause because she "assumed she had been discharged." The deputy concluded that "[t]he claimant was not told by anyone in authority that she had been discharged from the job." Smith appealed the deputy's determination, and on December 2, 2010, a hearing was held by teleconference before an Appeals Referee.

After hearing additional testimony from the parties, the Appeals Referee reversed the Employment Security deputy's determination and found Smith's testimony "that she was told by the manager not to come back to work credible." He found that Smith was discharged from her employment and that "[w]hile the manager may not have had the specific authority to discharge [Smith], [Smith] could reasonably conclude that, as a manger, such individual would have the authority to discharge an employee." The Referee found no misconduct and found Smith qualified for unemployment benefits.

Fashion Police appealed the decision to the Labor and Industrial Relations Commission. The Commission reversed in a split decision. In its findings of fact, the Commission concluded that Fashion Police's Manager Westfall "provided more detail of the events in question and her testimony was undiminished by claimant's counsel's cross-examination." The Commission further found "employer's evidence more believable than claimant's" and that Smith voluntarily quit "via voicemail to Ms. Westfall." The Commission, in its conclusions of law, determined that, because Smith presented her case on the theory that she was discharged by her employer, she did not present evidence of "good cause" to voluntarily quit. Consequently, the Commission disqualified Smith from unemployment benefits. This appeal followed.

■ In her sole point on appeal, Smith contends that the Commission's decision was procured by fraudulent testimony and, therefore, not supported by competent and substantial evidence. Because our review is limited to the issue raised in the point relied on, we only address Smith's allegation of fraud. *Lasker v. Johnson*, 123 S.W.3d 283, 289 (Mo.App.2003). Smith contends that Fashion Police first protested her application for benefits by claiming that Smith quit in the middle of her shift and left the store unattended. Thereafter, this charge was contradicted by Fashion Police's manager who reported: "I knew she was leaving and told her to lock the doors.... I gave her permission to leave. She was not fired for this." Smith also alleges that Fashion Police's manager testified falsely regarding telephone calls allegedly made to and received by Smith. Smith considers these contradictions and false testimony evidence of fraud and asserts that, because the Commission's decision was based on fraudulent averments not "contemplated" by the Commission, the decision was not founded on competent and substantial evidence.

■ Appellate review of the Commission's decision is governed by section 288.210, RSMo 2000. *Rush v. Kimco Corp.*, 338 S.W.3d 407, 410 (Mo.App.2011). We may not disrupt the decision "unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision was not supported by facts, or the decision was not supported by sufficient competent evidence" based on the entirety of the record. *Id.* While no deference is given the Commission regarding questions of law, the Commission is

entitled to deference on determinations of witness credibility. *White v. St. Louis Teachers Union, Div. of Employment Sec.,* 217 S.W.3d 382, 388 (Mo.App.2007).

Smith asks us to find that the Commission's decision was procured by fraud. We do not. In a case of first impression the Missouri Supreme Court in *Donley v. Industrial Commission* considered the meaning of "fraud" in Missouri's unemployment compensation statute. 624 S.W.2d 843, 846 (Mo. banc 1981). The court described the evidence necessary "to sustain the ground that the award was procured by fraud." *Id.*

> We think that what is required to sustain the ground 'that the award was procured by fraud' is the same kind of a showing that is required in a suit in equity to set aside a judgment on the ground that it was obtained by fraud, namely: That there was fraud which was practiced in the very act of obtaining the award; that there was fraud which operated, not upon matters pertaining to the judgment itself, but to the manner in which it was procured; that there was fraud which prevented the unsuccessful party from presenting his case or defense; or that there was fraud as to extrinsic, collateral acts or matters, *not examined and determined in the hearing before the Commission.*

*Id.* (quoting *Phillips v. Air Reduction Sales Co.,* 337 Mo. 587, 85 S.W.2d 551, 559 (Mo.1935)) (emphasis added) (citations omitted).

Here, it is clear that the owner of Fashion Police made a blatant charge of misconduct against Smith that was later contradicted by the manager. Nevertheless, this contradiction of one witness for Fashion Police by another witness for Fashion

Police was part of the record reviewed by the Commission.[2] Smith cites additional examples of what she considers fraudulent testimony and supplies telephone records she contends contradicts Fashion Police's testimony. Smith had the opportunity to enter the telephone records into evidence at the Appeals Tribunal hearing but did not. She did, however, reference the records when cross examining Fashion Police. The cross examination evidence was part of the record reviewed by the Commission.

All of the evidence, that Smith alleges perpetrated a fraud upon the Commission, was known to Smith at the time of the Appeals Tribunal hearing. Smith had ample opportunity to demonstrate her allegations of fraud through testimony, cross examination and the introduction of evidence at the Appeals Tribunal hearing. "Matters which should have been brought before the Commission to make a case or which should have been interposed there as a proper matter of defense cannot be relitigated because the parties neglected to do so...." *Phillips,* 85 S.W.2d at 559. Nevertheless, regardless of the extent the allegations of fraud were illuminated by Smith, evidence of the alleged fraud was still part of the record reviewed by the Commission. Fashion Police's initial protest letter, Fashion Police's statement contradicting the protest letter, and cross examination testimony of Fashion Police regarding the telephone records, were all part of the record before the Commission.

While Smith asserts that this evidence was not "contemplated" by the Commission, we must conclude that it was. The Commission's obligation on appeal is to review the record and, if necessary, " 'determine the credibility of witnesses and

---

2. Further, the individuals who made the contradictory statements testified at the Appeals Tribunal hearing. Smith had the opportunity to examine the witnesses regarding their contradictions.

the weight of their testimony, resolve any conflicts in the evidence, and reach its own conclusions on factual issues....'" *Adamson v. DTC Calhoun Trucking, Inc.,* 212 S.W.3d 207, 213 (Mo.App.2007) (quoting *Shaw v. Scott,* 49 S.W.3d 720, 728 (Mo. App.2001)). Fraud, under the statute and as relevant here, regards matters "not examined and determined" by the Commission. *Donley,* 624 S.W.2d at 846. Fashion Police's contradictory evidence and allegedly false testimony were part of the record reviewed by the Commission. The evidence, therefore, was "examined" by the Commission. This precludes a finding that the Commission's award was procured by fraud. Point denied.

We, therefore, conclude that the Labor and Industrial Relations Commission did not err in denying Smith unemployment benefits based on a decision procured by fraud, because fraud, as applicable to the facts of this case, regards matters not examined and determined by the Commission. The evidence Smith alleges to be fraudulent was part of the record reviewed by the Commission and was, therefore, examined by the Commission. We affirm the Commission's decision.

All concur.