IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 CASS COUNTY, MISSOURI, )
 )
 Respondent, )
 WD84333
 v. )
 )
 OPINION FILED:
 )
 November 30, 2021
 CITY OF LEE’S SUMMIT, MISSOURI, )
 )
 Appellant. )

 Appeal from the Circuit Court of Cass County, Missouri
 The Honorable William B. Collins, Judge

 Before Division Two: Mark D. Pfeiffer, Presiding Judge, and
 Karen King Mitchell and Anthony Rex Gabbert, Judges

 This case involves a dispute between the City of Lee’s Summit, Missouri; Cass County,

Missouri; and Raintree Lake Property Owners Association, Inc. (POA) over a bridge that is in

disrepair. The bridge spans the top of Raintree Lake Dam and its spillway. 1 The dam created

Raintree Lake, a private lake for the use of POA members only. County filed a petition seeking a

declaratory judgment that it does not own the bridge and is not responsible for its repair or

replacement. County moved for summary judgment, which the court granted, and City appeals.

 1
 The Raintree Lake Property Owners Association, Inc. (POA) describes the spillway as “the channel made
of rock which controls Raintree Lake’s water level and provides an exit for water from Raintree Lake to Middle Big
Creek.”
 On appeal, City claims that the court erred in granting County’s motion because (1) the

ruling is based on a quitclaim deed that is void as against both public policy and the Missouri

Constitution to the extent the deed conveyed the bridge, which is part of the dam, from County to

City (Point I); and (2) there are genuine issues of material fact relating to offer and acceptance of

the bridge (Point II). Finding no error, we affirm.

 Background2

 Before May 1976, Raintree Lake Development Corporation (Developer) constructed the

spillway, bridge, and corresponding roadway, which is now known as Southwest Raintree

Parkway.3 On May 4, 1976, Developer executed a Corporation Warranty Deed conveying to

County the area where the spillway, bridge, and roadway are located. A portion of the area

generally known as Raintree Lake lies in County and, sometime before May 16, 1977, City

annexed that portion of the area into City; the annexation included the area where the bridge is

located but excluded existing rights-of-way. County then executed and recorded a quitclaim deed,

dated May 16, 1977, in favor of City. Pursuant to the quitclaim deed, County transferred all of its

“rights, privileges and interest in the area previously described” to City with the intention that

County would not “hereafter claim or demand any right or title to the aforesaid tracts or parcels of

land or any part thereof.” Thus, City obtained all of County’s interest in the property covered by

the deed.

 Thereafter, City maintained and repaired the surface of the roadway and its shoulders.

Beginning in 1995, City included the bridge in City’s bridge maintenance program, inspecting the

 2
 When reviewing the grant of summary judgment, we “review[] the record in the light most favorable to the
party against whom judgment was entered.” Newton v. Mercy Clinic E. Cmtys., 596 S.W.3d 625, 628 (Mo. banc
2020).
 3
 We presume that Developer constructed the dam, too, but that fact is not part of the summary judgment
record before us. There is no indication in the record that City or County built the dam.

 2
bridge and preparing or obtaining estimates for repairs to the bridge. Starting in 2002, City also

funded maintenance on and repairs to the bridge itself with money from City’s budget for bridge

maintenance and repair, which is separate from City’s road maintenance budget. And, around

2011, City constructed concrete flumes and an inlet and pipe for the bridge and spillway.

 Currently, the bridge is in disrepair, and the parties disagree about which of them is

responsible for repairing or replacing the bridge. On January 6, 2020, County filed a declaratory

judgment action against City and the POA. In its petition, County asserted that, to the extent it

ever owned the bridge, County conveyed the bridge to City by virtue of the quitclaim deed. County

sought a declaration that the bridge is owned by City and/or the POA and that they bear

responsibility for maintaining, repairing, and/or replacing the bridge.

 The POA filed an answer that included a request for declaratory relief and counterclaims

based on unjust enrichment and inverse condemnation.4 The POA asked the court to declare that

(1) County or City owns the bridge; and (2) County, City, or both are responsible for maintaining,

repairing, and/or replacing the bridge. City also filed an answer to County’s petition. And both

City and County denied the POA’s claims.

 Subsequently, City filed an amended answer, asserting,

 The bridge and spillway are part of the Raintree Lake Dam, which was created and
 exists to provide a private lake for the benefit of the members of [the POA]. Mo.
 Const. art. VI, § 23, prohibits the grant of public money in aid of a private
 association or corporation. A determination that the City owns[] or has
 responsibility to repair or replace the bridge and spillway would violate that
 constitutional provision.

 ...

 Any public money spent by the City to maintain, repair or replace the Bridge, Dam
 or its spillway would be in violation of that constitutional provision, except that

 4
 Although the POA denominated its claims as counterclaims, it appears that some are cross-claims against
City.

 3
 related to maintenance of the right-of-way, as SW Raintree Parkway is a public
 road.

City further asserted that the POA owns, controls, and maintains the dam. City’s amended answer

also included a counterclaim against County for fraudulent conveyance and a cross-claim against

the POA. As part of its counterclaim, City asked the court to enter an order setting aside or holding

as void ab initio that part of the quitclaim deed purporting to convey any interest other than the

designated rights-of-way.

 For its cross-claim against the POA, City alleged that the POA, a private association, owns,

controls, and maintains Raintree Lake, a private lake, for the benefit of its members. City also

alleged that the POA owns, controls, and maintains the dam, which includes the spillway, and that

the dam and spillway were constructed and exist to create and maintain Raintree Lake. The POA

admitted these allegations, but denied City’s claim that the bridge is part of the dam. City further

alleged that it never accepted ownership of or responsibility for the bridge, spillway, or dam, except

for the right-of-way crossing over the bridge; the POA denied these allegations. Finally, City

alleged, and the POA denied, that ownership or control of the bridge by City would be tantamount

to holding that City is required to spend public funds to aid a private association in violation of

Mo. Const. article VI, § 23. And City requested the following relief:

 if this Court finds that the City owns the Bridge, or any part of the Dam, including
 its spillway, or has responsibility to expend public money for maintenance, repair
 or replacement of any of those structures, then . . . City prays that the Court also
 declare that Raintree Lake is open and available for use by all residents of the City.

 On October 5, 2020, County moved for summary judgment on its claim for declaratory

judgment and all counterclaims filed against County. According to County’s motion, the

uncontroverted material facts show “County conveyed any legal interest in the bridge . . . to . . .

City . . . through the May 16, 1977 quit claim deed [which] unambiguously conveyed all of . . .

 4
County’s interests (if any) in the Bridge [and] City has since exercised dominion and control over

the Bridge for decades.” The POA moved to join County’s motion for summary judgment and

asked the court to enter summary judgment in the POA’s favor on all claims by and against it and

to declare that the POA has no legal interest in the bridge and is not responsible for its maintenance

or repair.

 In its response to County’s summary judgment motion, City admitted several facts,

including the fact that the bridge is located in the area annexed by City as described in the quitclaim

deed and that the deed conveyed rights-of-way in that area. City filed a statement of additional

uncontroverted material facts5 and a legal memorandum opposing County’s motion. In its legal

memorandum, City reiterated its argument that Mo. Const. article VI, § 23, prohibits both County

and City from owning the bridge because it is part of the dam that creates Raintree Lake, a private

lake accessible to POA members only, and article VI, § 23, prohibits expenditures in aid of the

POA, a private association.

 On January 12, 2021, the court issued an order granting County’s motion, concluding

“there is no genuine issue as to any material fact and [County] is entitled to judgment as a matter

of law . . . on its claim for declaratory relief and on the counterclaims asserted against it.”

According to the court, it is uncontroverted that the area of Southwest Raintree Parkway, the

spillway, and the bridge over which the Parkway runs are located within the area described in the

quitclaim deed and that County conveyed that area as well as “[a]ll rights-of-ways, easements and

other rights, privileges and interests in the area previously described” to City. Accordingly, the

court concluded that County “is neither the owner of, nor responsible now or in the future for the

maintenance or repair or replacement of Southwest Raintree Parkway or the Bridge and spillway

 5
 County objected to most of City’s additional uncontroverted material facts.

 5
over which Southwest Raintree Parkway runs and within the area more particularly described [in

the quitclaim deed].” The court did not expressly address City’s constitutional argument.

 City filed a motion to amend the court’s summary judgment order to designate it a final

judgment for purposes of appeal. On February 11, 2021, the court issued a corrected order and

judgment granting City’s motion and finding “there is no just reason for delay, and this Judgment

is certified as final for the purpose of appeal.”

 Jurisdiction

 Before addressing the merits of City’s points on appeal, we must first determine whether

we have appellate jurisdiction in this case. McConnell v. West Bend Mut. Ins. Co., 606 S.W.3d

181, 187 (Mo. App. W.D. 2020). “The right to appeal is purely statutory and, where a statute does

not give a right to appeal, no right exists.” Id. (quoting Wilson v. City of St. Louis, 600 S.W.3d

763, 767 (Mo. banc 2020)). “Although many statutes govern ‘the right to appeal, the only statute

even potentially applicable to the present case is section 512.020(5),’ which provides that ‘final

judgments’ are appealable.” Id. (quoting Wilson, 600 S.W.3d at 767). For purposes of

section 512.020(5), a “final judgment” must satisfy two criteria: (1) “it must be a judgment (i.e.,

it must fully resolve at least one claim in a lawsuit and establish all the rights and liabilities of the

parties with respect to that claim)”; and (2) “it must be ‘final,’ either because it disposes of all

claims (or the last claim) in a lawsuit, or because it has been certified for immediate appeal

pursuant to Rule 74.01(b).” Id. (quoting Wilson, 600 S.W.3d at 771). “A judgment is eligible to

be certified under Rule 74.01(b) only if it disposes of a ‘judicial unit’ of claims, meaning it: (a)

disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that

are sufficiently distinct from the claims that remain pending in the circuit court.” Id. (quoting

Wilson, 600 S.W.3d at 771). “Determining whether these criteria are met is a question of law and

 6
depends on the content, substance, and effect of the order, not the circuit court’s designation.” Id.

(quoting Wilson, 600 S.W.3d at 771) (internal quotations omitted).

 Here, City appeals the motion court’s order granting summary judgment to County. That

order resolved County’s claim for a judicial declaration that County neither owns the bridge nor is

responsible for its maintenance and repair. The order also resolved all counterclaims against

County as those claims were based on County’s alleged ownership of or legal responsibility for

the bridge. The only claims remaining in the underlying case are those between City and the POA,

and County is not a party to those claims. Thus, the order meets the first “final judgment” criterion

because it “fully resolve[s] at least one claim in a lawsuit and establish[es] all the rights and

liabilities of the parties with respect to that claim”—here, County’s claim for declaratory judgment

and the derivative counterclaims. With respect to the second criterion, the motion court certified

its order for immediate appeal pursuant to Rule 74.01(b).6 And the judgment was eligible to be

certified because the order disposes of a “judicial unit” of claims—all claims by and against at

least one party—here, County. Therefore, City appeals from a final judgment, and we have

jurisdiction to hear the appeal.

 Standard of Review

 “The trial court makes its decision to grant summary judgment based on the pleadings,

record submitted, and the law; therefore, [we] need not defer to the trial court’s determination and

review[] the grant of summary judgment de novo.” S.M.H. v. Schmitt, 618 S.W.3d 531, 533-34

 6
 Rule 74.01(b) states, in relevant part,

 When more than one claim for relief is presented in an action, [including] as a . . . counterclaim [or]
 cross-claim . . . or when multiple parties are involved, the court may enter a judgment as to one or
 more but fewer than all of the claims or parties only upon an express determination that there is no
 just reason for delay.

All rule references are to the Missouri Supreme Court Rules (2020).

 7
(Mo. banc 2021) (quoting Goerlitz v. City of Maryville, 333 S.W.3d 450, 452 (Mo. banc 2011)).

We apply “the same criteria as the trial court in determining whether summary judgment was

proper.” Id. at 534 (quoting Goerlitz, 333 S.W.3d at 452). “Summary judgment is . . . proper

[only] if the moving party establishes that there is no genuine issue as to the material facts and that

the movant is entitled to judgment as a matter of law.” Id. (quoting Goerlitz, 333 S.W.3d at 452).

“We will affirm the trial court’s summary judgment on any ground supported by the record,

whether relied upon by the trial court or not.” Payne v. City of St. Joseph, 58 S.W.3d 84, 86 (Mo.

App. W.D. 2001).

 Analysis

 City raises two claims on appeal. City argues that the court erred in granting County’s

motion because (1) the quitclaim deed was void as against both public policy7 and the Missouri

Constitution to the extent the deed conveyed the bridge, which is part of the dam, to City (Point I);

and (2) there are genuine issues of material fact relating to offer and acceptance of the bridge

(Point II).8 For ease of analysis, we address City’s points in reverse order.

 A. The court did not err in granting summary judgment to County because there are
 no genuine issues of material fact and County is otherwise entitled to judgment as
 a matter of law.

 For its second point, City asserts that County is not entitled to summary judgment because

there are genuine issues of material fact as to whether County intended to convey the bridge and

 7
 City did not raise a claim regarding public policy below. Thus, City waived that claim. Southside Ventures,
LLC v. La Crosse Lumber Co., 574 S.W.3d 771, 788 (Mo. App. W.D. 2019) (appellant waived argument that the
judgment lacked certainty regarding the location of an easement by failing to raise the claim below). Accordingly, in
our analysis of City’s first point, we discuss only City’s constitutional claim.
 8
 County argues that we should dismiss City’s appeal because its brief fails to comply with the statement-of -
facts and points-relied-on requirements of Rule 84.04. We disagree, as City substantially complied with Rule 84.04.
Moreover, “we prefer to resolve appeals on their merits, especially when we are able to discern the gist of the
appellant’s allegations of error.” Messina v. Shelter Ins. Co., 585 S.W.3d 839, 842 n.1 (Mo. App. W.D. 2009) (quoting
Bartsch v. BMC Farms, LLC, 573 S.W.3d 737, 742 (Mo. App. W.D. 2019)). Here, “because [City’s] appellate
arguments are fully intelligible . . . , we address the merits of [its] claims.” Id.

 8
whether City accepted the bridge.9 While the motion court concluded that County was entitled to

summary judgment because County conveyed the bridge to City via the quitclaim deed, we will

affirm the court’s judgment “on any ground supported by the record, whether relied upon by the

[motion] court or not.” Payne, 58 S.W.3d at 86. The record here supports summary judgment in

County’s favor on a different basis than that relied on by the motion court—one that does not

require us to determine who owns or is responsible for the bridge.

 The undisputed material facts are as follows. On May 4, 1976, Developer executed a

Corporation Warranty Deed conveying to County the area where the previously constructed

spillway, bridge, and roadway are located. Sometime before May 16, 1977, City annexed the area

where the bridge is located, excluding existing rights-of-way. On May 16, 1977, County executed

and recorded a quitclaim deed in favor of City. Pursuant to the quitclaim deed, City obtained all

property interests possessed by County.10 Thereafter, City performed required maintenance and

repairs to the surface of the roadway over the bridge and its shoulders. Beginning in 1995, City

included the bridge in City’s bridge maintenance program, inspecting the bridge and preparing or

obtaining estimates for repairs to the bridge. Starting in 2002, City also funded maintenance on

and repairs to the bridge with money from City’s budget for bridge maintenance and repair. And,

around 2011, City constructed concrete flumes and an inlet and pipe for the bridge and spillway.

 “The intention of the grantor is to be determined by the language contained in the deed

unless an ambiguity exists.” Robert Jackson Real Est. Co., Inc. v. James, 755 S.W.2d 343, 346

 9
 City’s second point pertains to only the issues of offer and acceptance of the bridge. Thus, our review is
correspondingly limited to these issues. See Smith v. Fashion Police, LLC, 353 S.W.3d 469, 471 (Mo. App. W.D.
2011) (“our review is limited to the issue[s] raised in the point[s] relied on”).
 10
 The purpose of a quitclaim deed is to transfer all of the grantor’s interest in the property that is the subject
of the deed. See, e.g., Ott v. Pickard, 237 S.W.2d 109, 111 (Mo. 1951) (“But probably nothing is better understood
in the law of conveyancing than that a . . . quitclaim deed transfers and is designed to transfer . . . such title and interest
as the grantor had when he delivered the deed.”); Reasor v. Marshall, 221 S.W.2d 111, 115 (Mo. 1949) (“Generally
a quitclaim deed operates as a conveyance of any right, at law or in equity, the grantor has.”).

 9
(Mo. App. E.D. 1988); see also Fairmount Foods Co. v. Skelly Oil Co., 616 S.W.2d 548, 553 (Mo.

App. W.D. 1981) (quoting Hooks v. Spies, 583 S.W.2d 569, 571 (Mo. App. E.D. 1979) (“If th[e]

language [of an instrument] is clear and unambiguous, the intent is gathered from the

instrument.”)); § 442.46011 (“[E]very conveyance of real estate shall pass all the estate of the

grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily

implied in the terms of the grant.”).

 Here, County’s intent to convey all of its interest (whatever that might be) in the property

described therein is unambiguous. County transferred all of its “rights, privileges and interest in

the area previously described” to City with the intention that County would not “hereafter claim

or demand any right or title to the aforesaid tracts or parcels of land or any part thereof.” And we

reject City’s reliance on other evidence, including subsequent correspondence, to call County’s

intent to convey the bridge into question. “The rules of construction provide for the admission of

extrinsic evidence when construing a conveyance only if the language of the deed is unclear and

ambiguous.” Robert Jackson, 755 S.W.2d at 346. That is not the case here.

 “[A]cceptance of a deed may be shown by the acts and conduct of the grantee[, and]

possession and improvement of the premises conveyed indicate acceptance of the deed.” Hafford

v. Smith, 369 S.W.2d 290, 295 (Mo. App. 1963); see also Kindred v. City of Smithville, 292 S.W.3d

420, 427 (Mo. App. W.D. 2009) (finding city “clearly accepted” a recorded easement “as it

installed water and sewer lines across the easement and has continued to maintain the utility lines

on the [plaintiffs’] property for four decades.”). Here, City acknowledged that it performed

maintenance and repairs to the roadway over the bridge and its shoulders. City further

acknowledged that, in 1995, it began inspecting the bridge and preparing or obtaining estimates

 11
 All statutory references are to the Revised Statutes of Missouri, Cum. Supp. 2020.

 10
for repairs to the bridge, and, in 2002, City began funding maintenance and repair work on the

bridge. These actions by City over a period of years, together with the lack of evidence that City

contested ownership or control of the bridge until the need for major repairs and/or replacement

of the bridge became evident, show that City accepted whatever interest County conveyed through

the quitclaim deed.12

 Thus, the undisputed material facts show that County conveyed, and City accepted,

County’s interest in the property described in the quitclaim deed. City does not contest that it

accepted the quitclaim deed but argues that it did so only as to the rights-of-way and not as to fee

simple title. The scope of the interest received by City, however, is immaterial to our review of

the motion court’s judgment finding that County does not own or control the bridge. For purposes

of reviewing the court’s judgment, we need not determine what interest County had in the property

but only that County conveyed its entire interest to City. Thus, County does not own or otherwise

control the property at issue.

 Based on the summary judgment record here, there is no genuine issue as to the facts

material to the question of whether County conveyed all its interest (whatever that might be) in the

property to City, and County is otherwise entitled to a judgment as a matter of law declaring that

County neither owns nor is responsible for the bridge.

 Point II is denied.

 12
 The question here is whether City did, in fact, accept the quitclaim deed, and not whether City could, as a
legal matter, accept the deed.

 11
 B. The court did not err in granting summary judgment to County on its declaratory
 judgment action because the quitclaim deed did not violate article VI, § 23, of the
 Missouri Constitution.

 City’s first point relied on claims that the court erred in granting County’s motion because

the quitclaim deed was void under article VI, § 23, of the Missouri Constitution to the extent the

deed conveyed the bridge, which is part of a private dam, to City.13

 Article VI, § 23, states,

 No county, city or other political corporation or subdivision of the state shall own
 or subscribe for stock in any corporation or association, or lend its credit or grant
 public money or thing of value to or in aid of any corporation, association or
 individual, except as provided in this constitution.

 City’s constitutional argument rests on the following premises: the motion court’s

conclusion that County does not own the bridge because County transferred all of its interests to

City is tantamount to a finding that City owns the bridge under the quitclaim deed; the bridge is

inseparable from the dam, and the dam and its spillway exist solely for the purpose of creating and

maintaining Raintree Lake, a private lake owned by the POA, a private association; and, if City

owns the bridge by reason of the quitclaim deed, City necessarily also owns part of the dam, which

is prohibited by article VI, § 23. Thus, City contends, the motion court erred by (1) implicitly

holding that the bridge is severable from the dam and spillway and (2) expressly holding that

County transferred ownership of and responsibility for the bridge to City via the quitclaim deed.

Accordingly, City asks us to reverse and remand the summary judgment with directions to the

 13
 County argues that City did not properly preserve its constitutional claim because City did not raise the
issue of the deed’s validity below. County interprets City’s argument below too narrowly. Because City did raise the
issue of the deed’s constitutional validity below, the argument is properly preserved for review.

 12
motion court to hold that the quitclaim deed was void to the extent it transferred to City a section

of the dam, which includes the bridge.14

 As City acknowledges, the purported constitutional barrier would apply equally to City and

County. Thus, if article VI, § 23, prohibits City from owning the dam, spillway, and bridge, the

same would be true of County. As County could transfer to City only the property interest County

had in the bridge, spillway, and dam, if County had no fee simple interest, none was transferred.

 Further, we need not determine the validity of the quitclaim deed, because City’s argument

that the deed is unconstitutional is based on a hypothetical or speculative situation that may not

occur. “In a declaratory judgment action, [we] will not ‘adjudicate hypothetical or speculative

situations that may never come to pass.’” West Central Mo. Region Lodge #50 of Fraternal Order

of Police v. City of Grandview, 460 S.W.3d 425, 443 (Mo. App. W.D. 2015) (quoting Schweich v.

Nixon, 408 S.W.3d 769, 778 (Mo. banc 2013)). Here, the record supports summary judgment in

County’s favor without the need to determine whether County once owned the bridge and

conveyed it to City. The question of City’s responsibility, if any, for the bridge is pending in the

ongoing litigation between City and the POA, and, unless and until the court determines that City

owns the bridge, article VI, § 23, is not implicated. Because we “avoid the decision of a

constitutional question if the case can be fully determined without reaching it,” id. at 443-44

(quoting Winfrey v. State, 242 S.W.3d 723, 724 n.2 (Mo. banc 2008)), and here we need not reach

it, Point I is denied.

 14
 City does not dispute that SW Raintree Parkway is a public street, which is controlled and maintained by
City and, thus, repairs to the street surface, underlying bridge deck, guardrails and other safety features can be justified
as general maintenance of a public right-of-way.

 13
 Conclusion

 Because there are no genuine issues of material fact and County is entitled to judgment as

a matter of law, we affirm the motion court’s award of summary judgment to County.

 Karen King Mitchell, Judge

Mark D. Pfeiffer, Presiding Judge, and Anthony Rex Gabbert, Judge, concur.

 14